IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TELEBRANDS CORP., Plaintiff, v. MARC GLASSMAN, INC., and MAGIC CREATIONS, INC., Defendants. | CIVIL ACTION NO. MAY 5, 2009 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Telebrands Corp., for its Complaint against Defendants Marc Glassman, Inc. and Magic Creations, Inc., alleges as follows:

## THE PARTIES

1. Telebrands Corp. ("Telebrands") is a corporation organized and existing under the laws of the State of New Jersey, having a principal place of business at 79 Two Bridges Road, Fairfield, New Jersey 07004.

2. Upon information and belief, defendant Marc Glassman, Inc. ("Glassman") is a corporation organized and existing under the laws of the state of Ohio, having a principal place of business at 5841 W. 130th Street, Cleveland, Ohio 44130. Upon information and belief, Glassman is doing business throughout the United States, including within the State of Connecticut.

3. Upon information and belief, Glassman operates throughout the State of Connecticut a chain of discount stores known as "Xpect Discounts," including a location at 100 Newtown Road, Danbury, Connecticut.

4. Upon information and belief, Glassman operates throughout the State of Ohio a chain of

discount stores known as "Marc's."

5. Upon information and belief, defendant Magic Creations, Inc. ("Magic Creations") is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 200 28th Street, McKeesport, Pennsylvania 15132. Upon information and belief, Magic Creations is doing business throughout the United States, including in Connecticut.

6. Upon information and belief, Magic Creations contracts with Glassman to supply goods to be sold in Xpect Discount stores located in Connecticut.

## NATURE OF CLAIMS, JURISDICTION AND VENUE

7. This action arises under the Trademark and Unfair Competition laws of the United States (15 U.S.C. § 1051 *et seq.*), under the Copyright Law of the United States (17 U.S.C. § 101 *et seq.*), under the statutory laws of the State of Connecticut (Connecticut General Statutes § 35-11(i), Connecticut General Statutes § 42-110(b) *et seq.*), and under the common law of the State of Connecticut.

8. Jurisdiction of this Court is founded upon 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332(a)(1), 1338(a) and (b), and the supplemental jurisdiction of this Court under 28 U.S.C. § 1367. The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

9. Venue is proper within this Judicial District under 28 U.S.C. §§ 1391(b) and (c) and 1400(a).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10. Telebrands has been in the business of marketing a wide variety of products since its inception in 1987 and markets its products through both retail outlets and direct response advertising.

11. In or about October 2007, Telebrands commenced the marketing roll-out of a product known as the PED EGG foot file. The PED EGG product is an egg-shaped, precision foot file designed to gently remove calluses and dead skin from a user's feet. Telebrands developed a unique and distinctive shape for its product, adopted and began using the fanciful and distinctive trademark PED EGG for its product when it first shipped goods bearing the mark in October 2007, and has used the

distinctive product configuration and trademark continuously since that date. Telebrands' product is sold through direct response channels to the general consuming public throughout the United States and within this Judicial District. Telebrands also sells its product to retail stores, which sell to the general consuming public, throughout the United States and within this Judicial District.

12. The product marketed and sold by Telebrands under the trademark PED EGG is a foot file with a unique egg shape. The PED EGG product is made up of three separate parts. The first part is the white top cover or "handle" that can be snapped over the second part, which contains a metal filing surface. The second part includes a cylindrical white plastic housing that surrounds the metal filing surface. The metal filing surface is made from a plurality of stainless steel micro files. When the first and second parts are connected together, a user can conveniently hold the top cover and guide the filing surface in a back and forth motion on his or her feet to gently remove calluses and dead skin. The skin shavings are collected in the compartment formed by connecting the first and second parts. A user may separate the first and second parts to empty the skin shavings into the garbage. The third part of the PED EGG product is a white cover that snaps over the cylindrical plastic housing of the second part to cover the metal filing surface. Alternatively, the third part may be connected to the first part and used in connection with a self-adhesive emery pad on the bottom of the protective cover. The trademark PED EGG and a foot design appear in blue ink on the top cover of the PED EGG product. The inside of the bottom protective cover bears a marking as follows: "Patents Pending, Telebrands Corp. Fairfield, NJ, www.telebrands.com, Made In China." Photographs of Telebrands' genuine PED EGG product are attached hereto as Exhibit A.

13. The PED EGG product is packaged in distinctive packaging, which uses distinctive words and images. The PED EGG product is displayed through a clear blister package with a blue and white background. The product and trademark is displayed on the left and the metal filing cartridge is displayed on the right. A raised section extends across the bottom of the blister package. The raised section has a curved contour and displays content that repeats the blue and white color

scheme. The packaging includes a series of distinctive images on the front and the back of the packaging. The packaging also includes the "As Seen On TV" logo and the trademark TELEBRANDS. Photographs of Telebrands' genuine PED EGG packaging are attached as Exhibit B.

14. The PED EGG packaging includes instructions that contain illustrations and describe use of the PED EGG product. A copy of the instructions from the genuine PED EGG product is attached as Exhibit C.

15. The trade dress of the PED EGG product and packaging were adopted to give the PED EGG product and packaging a distinctive appearance and to indicate source.

16. International Edge, Inc. ("International Edge") owns the intellectual property rights to the PED EGG product and has granted Telebrands an exclusive license to use those intellectual property rights in the United States.

17. The PED EGG packaging and the PED EGG instructions, including the text and photographs thereon, were created and authored by International Edge and represent wholly original works of authorship fixed in a tangible medium of expression, and are each copyrightable subject matter under the Copyright Law of the United States.

18. International Edge duly complied with the provisions of the Copyright Law of the United States and duly applied for and was issued U.S. Copyright Registration No. VA 1-130-806 for its PED EGG packaging. This copyright registration is valid and subsisting. A copy of the copyright registration certificate for the PED EGG packaging is attached as Exhibit D, together with a copy of the deposit.

19. International Edge duly complied with the provisions of the Copyright Law of the United States and duly applied for and was issued U.S. Copyright Registration No. Txu 1-578-397 for its PED EGG instructions. This copyright registration is valid and subsisting. A copy of the copyright registration certificate for the PED EGG instructions is attached as Exhibit E, together with a copy of

the deposit.

20. The trademark PED EGG is the subject of U.S. Trademark Registration No. 3,450,241, issued on June 17, 2008 and owned by International Edge. A copy of the trademark registration is attached as Exhibit F.

21. The trademark PED EGG and Design is the subject of U.S. Trademark Registration No. 3,522,124, issued on October 21, 2008 and owned by International Edge. A copy of the trademark registration is attached as Exhibit G.

22. The trademark PED EGG Design is the subject of United States Trademark Application Serial Number 77/358,414, filed December 21, 2007, and owned by International Edge. The foregoing Trademark Registrations Nos. 3,450,241 and 3,522,124 and trademark application (Serial No. 77/358,414) will be referred to herein collectively as the "PED EGG Trademarks."

23. The PED EGG Trademarks are fanciful, distinctive and well-recognized and represent the source of Plaintiff's product sold in association therewith and a substantial goodwill of Plaintiff throughout the United States, including Connecticut.

24. The shape and the white color of the PED EGG product (the "Product Trade Dress") are fanciful, distinctive and well-recognized and represent the source of Plaintiff's product sold in association therewith and a substantial goodwill of Plaintiff throughout the United States, including Connecticut.

25. The packaging for the PED EGG product (the "Packaging Trade Dress") is fanciful, distinctive and well-recognized and represents the source of Plaintiff's product sold in association therewith and a substantial goodwill of Plaintiff throughout the United States, including Connecticut.

26. Since October 2007, Telebrands has sold in excess of 18 million PED EGG products in the United States and has expended to date in excess of $11 million advertising and promoting the PED EGG product. As a result of its long use, substantial sales, extensive advertising and promotional activities in connection with Plaintiff's PED EGG product, the PED EGG Trademarks have become

famous, and the PED EGG Trademarks, the Product Trade Dress and the Packaging Trade Dress have become well and favorably known to the purchasing public and are recognized as indicating the source or origin of Plaintiff's product.

27. On information and belief, Defendants market and sell products of varying kinds in interstate commerce and in the State of Connecticut.

28. On information and belief, without authorization from Plaintiff, and long after the PED EGG Trademarks became famous, Defendants copied the original works subject of the copyright registrations, and marketed and sold counterfeit PED EGG products in interstate commerce, including within the State of Connecticut, using Plaintiffs' distinctive PED EGG Trademarks, distinctive Product and Packaging Trade Dress, and original copyrighted material. A photograph showing Plaintiff's genuine PED EGG product and Defendants' counterfeit PED EGG product side-by-side for comparison is attached as Exhibit H. Photographs showing Plaintiff's genuine PED EGG packaging and Defendants' counterfeit PED EGG packaging side-by-side for comparison purposes are attached as Exhibit I. Photocopies of Plaintiff's original copyrighted instruction sheet and Defendants' copy thereof are attached as Exhibit J.

29. As can be seen in the photographs and photocopies, Defendants are using the identical PED EGG Trademarks, Product and Packaging Trade Dress and the identical product packaging and instructions used by Plaintiff.

30. Although Defendants removed the trade name TELEBRANDS and Telebrands' UPC code from the bottom of the counterfeit product packaging, all other features are identical.

31. On information and belief, Defendants do not advertise the PED EGG product on television, although their counterfeit PED EGG packaging includes the statement "As Seen On TV," which is a false material statement likely to influence a consumer's purchasing decision.

32. On information and belief, Defendants' adoption and use of a counterfeit, copy or colorable imitation of the PED EGG Trademarks, Product Trade Dress, Packaging Trade Dress and

copyrighted material was intentional and with full knowledge of Plaintiff's prior use thereof.

33. Defendants' use of a counterfeit, copy or colorable imitation of the PED EGG Trademarks, Product Trade Dress, Packaging Trade Dress and copyrighted material was and is without Plaintiff's authorization and consent.

34. On information and belief, Defendants' adoption and use of a counterfeit, copy or colorable imitation of the PED EGG Trademarks, Product and Packaging Trade Dress and copyrighted materials was and is with the intent and purpose of confusing, misleading and deceiving the public, and unfairly capitalizing on Plaintiff's initiative and valuable goodwill.

35. Plaintiff is being irreparably injured and monetarily damaged by Defendants' acts. Plaintiff has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF**
**(TRADEMARK INFRINGEMENT)**

36. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-35 above, as though fully set forth herein.

37. This cause of action arises under Section 32 of the Lanham Act, 15 U.S.C. § 1051 *et seq*.

38. By the acts as above alleged, Defendants have used in interstate commerce a reproduction, counterfeit, copy and colorable imitation of the federally registered trademarks PED EGG and PED EGG and Design in connection with the sale, offering for sale, distribution and advertising of its goods in a manner that is likely to cause confusion, mistake or deception of purchasers and potential purchasers as to the origin, sponsorship, or approval of Defendants' product by Plaintiff, and, therefore, have committed trademark infringement under the Lanham Act, 15 U.S.C. §1114(1).

39. Defendants' complained of acts are willful.

40. Defendants will, on information and belief, continue to infringe upon Plaintiff's rights under §32 of the Lanham Act unless and until Defendants are enjoined by this Court. Plaintiff has been and is likely to continue to be injured unless Defendants are enjoined. Plaintiff has no adequate

remedy at law.

**SECOND CLAIM FOR RELIEF**
**(FEDERAL UNFAIR COMPETITION)**

41. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-40 above, as though fully set forth herein.

42. This cause of action arises under Section 43(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*

43. By the acts as above alleged, Defendants have used in interstate commerce in connection with their goods, false designations of origin and false descriptions and representations that are likely to cause confusion, mistake or deception of purchasers and potential purchasers as to the affiliation, connection or association of Defendants with Plaintiff and as to the origin, sponsorship, or approval of Defendants' product by Plaintiff, and, therefore, have engaged in unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

44. By the acts alleged above, Defendants have used in interstate commerce in connection with their goods false designations of origin and false descriptions and false representations in commercial advertising or promotion which misrepresent the nature, characteristics and qualities of such goods in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

45. Defendants' complained of acts are willful.

46. Defendants will, on information and belief, continue to infringe upon Plaintiff's rights under §43(a) of the Lanham Act unless and until Defendants are enjoined by this Court. Plaintiff has been and is likely to continue to be injured unless Defendants are enjoined. Plaintiff has no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**(TRADEMARK DILUTION)**

47. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-46 above, as though fully set forth herein.

48. This cause of action arises under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

49. The PED EGG Trademarks are "famous marks" and are distinctive within the meaning of § 43(c) of the Lanham Act and have been famous and distinctive marks since prior to Defendants' conduct as alleged herein.

50. By the acts as above alleged, after the PED EGG Trademarks became famous, Defendants commenced use of marks in commerce in a manner likely to dilute the distinctive quality of the PED EGG Trademarks and with the willful intent to trade on Plaintiff's reputation and/or to cause dilution of the PED EGG Trademarks.

51. Defendants acted with notice and full knowledge that such use was not authorized or licensed by Plaintiff, and Defendants' complained of acts are willful.

52. Defendants will, on information and belief, continue to dilute the PED EGG Trademarks in violation of §43(c) of the Lanham Act unless and until Defendants are enjoined by this Court. Plaintiff has been and is likely to continue to be injured unless Defendants are enjoined. Plaintiff has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**(COPYRIGHT INFRINGEMENT)**

53. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-52 above, as though fully set forth herein.

54. This cause of action arises under Section 501 of the Copyright Act of 1976, 17 U.S.C. § 101, *et seq*.

55. By the acts above alleged, Defendants have infringed the U.S. Copyright Registrations Nos. VA 1-130-806 and Txu 1-578-397.

56. All of Defendants' acts were without Plaintiff's authorization or consent, and Defendants' complained of acts are willful.

57. Defendants will, on information and belief, continue to infringe upon Plaintiff's rights under §501 of the Copyright Act unless and until Defendants are enjoined by this Court. Plaintiff has been

and is likely to continue to be injured unless Defendants are enjoined. Plaintiff has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF (CONNECTICUT TRADEMARK DILUTION (C.G.S. § 35-11))

58. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-57 above, as though fully set forth herein.

59. This cause of action arises under Section 35-11(i)(c) of the Connecticut General Statutes, which states that the registrant of a mark that is famous shall be entitled to an injunction against another's use of a mark, commencing after the registrant's mark becomes famous, which causes dilution of the distinctive quality of the registrant's mark.

60. Plaintiff's registered trademarks are famous and distinctive in Connecticut.

61. Defendants, upon information and belief, with full knowledge of the fame of Plaintiff's registered marks, willfully intended to and did trade on Plaintiff's reputation and on the goodwill associated with the registered marks and have misled and will continue to mislead the public into assuming a connection between Plaintiff and Defendants by Defendants' unlawful marketing, distribution and/or sale of its counterfeit goods.

62. Defendants have caused damage to Plaintiff by tarnishing Plaintiff's valuable reputation and diluting or blurring the distinctiveness of the registered marks in violation of Connecticut General Statutes Section 35-11(i), and will continue to dilute the distinctive quality of the PED EGG and PED EGG & Design marks unless enjoined by this Court.

63. Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF (CUTPA (C.G.S. § 42-110(b)))

64. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-63 above as though fully set forth herein.

65. This cause of action arises under Section 42-110(b) *et seq*. of the Connecticut Unfair Trade Practices Act ("CUTPA"), which states that no person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

66. Each Defendant is a "person" as defined in CUTPA.

67. At all times relevant to this action, Defendants were engaged in the conduct of trade or commerce in the state of Connecticut within the meaning of CUTPA.

68. Defendants are prohibited by § 42-110b of the Connecticut General Statutes from engaging in unfair or deceptive acts or practices in the conduct of trade or commerce, but they have engaged in unfair and deceptive trade as described above.

69. Defendants' deceptive representations and actions have been and are immoral, unethical, oppressive, and unscrupulous and have violated public policy.

70. Defendants' deceptive representations and actions constitute unfair and deceptive practices in violation of Connecticut General Statutes § 42-110(b)a et seq.

71. Defendant's deceptive acts and practices have caused substantial injury and ascertainable losses to Plaintiff.

72. As a result thereof, Defendants are liable to Plaintiff for actual damages.

73. By the acts above alleged, Defendants have engaged in the State of Connecticut in unfair methods of competition and unfair and deceptive practices in the conduct of commerce and have caused and are likely to continue to cause injury to Plaintiff's intellectual property, business reputation, the PED EGG marks and other valuable goodwill associated with the PED EGG mark at no cost to Defendants, all in violation of CUTPA, Connecticut General Statutes §42-110(b), *et seq*.

74. Plaintiff has no adequate remedy at law and, if Defendants' activities are not enjoined, Plaintiff will continue to suffer irreparable harm and injury to its goodwill and reputation.

75. A copy of this Complaint is being mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut pursuant to Connecticut General Statutes § 42-

110g(c).

**SEVENTH CLAIM FOR RELIEF**
**(COMMON LAW UNFAIR COMPETITION AND TRADEMARK INFRINGEMENT)**

76. Plaintiff repeats and realleges the allegations set forth in paragraphs 1-75 above, as though fully set forth herein.

77. This cause of action arises under Connecticut common law.

78. By the acts as above alleged, Defendants have used in connection with their goods, false designations of origin and false descriptions and representations that are likely to cause confusion, mistake or deception of purchasers and potential purchasers as to the affiliation, connection or association of Defendants with Plaintiff and as to the origin, sponsorship, or approval of Defendants' product by Plaintiff, and, therefore, Defendants have engaged in unfair competition and trademark infringement in violation of the common law of unfair competition and trademark infringement of the State of Connecticut.

79. As a result of Defendants' conduct, Plaintiff has suffered and is likely to continue to suffer harm to its reputation and goodwill, unless Defendants are enjoined. Plaintiff has no adequate remedy at law.

**JURY DEMAND**

Plaintiff demands trial by jury of all claims triable to a jury.

**WHEREFORE**, Plaintiff demands judgment:

a. Preliminarily and permanently enjoining Defendants, their agents, servants, employees and all those acting in concert or participation with them:

1. from importing, distributing, advertising, promoting, selling, or offering for sale any product under or in connection with the PED EGG Trademarks or any colorable variation of the PED EGG Trademarks or any confusingly similar marks unless the product emanates from or is

authorized by Plaintiff;

2. from importing, distributing, advertising, promoting, selling, or offering for sale products that incorporate, copy or colorably imitate the trade dress of Plaintiff's PED EGG products;

3. from importing, distributing, advertising, promoting, selling, or offering for sale product in packaging shown in Exhibit H, or any copy or colorable imitation thereof or any confusingly similar trade dress;

4. from further diluting and infringing the PED EGG Trademarks and intellectual property and damaging Plaintiff's goodwill;

5. from importing, distributing, advertising, promoting, selling, or offering for sale product in packaging copied from or substantially similar or identical to the packaging for Plaintiff's PED EGG product, which is the subject of U.S. Copyright Registration No.VA 1-130-806;

6. from importing, distributing, advertising, promoting, selling, or offering for sale product in packaging that includes instructions copied from or substantially similar or identical to the instructions for Plaintiff's PED EGG product, which is the subject of U.S. Copyright Registration No. Txu-1-578-397;

7. from using the "As Seen On TV" logo on the packaging for their product unless and until they advertise their product on television in the markets in which their products are being sold;

8. from otherwise unfairly competing with Plaintiff in any manner; and

9. from falsely representing or suggesting that the product Defendant sells or offers for sale is genuine, or is authorized by or emanates from Plaintiff, or from otherwise falsely advertising, representing or suggesting any connection with Plaintiff unless Defendant's product is genuine PED EGG product and emanates from or is authorized by Plaintiff.

b. Requiring Defendants to:

1. cancel all outstanding orders for PED EGG product that were placed in response to its false advertisements and to refund any monies received;

2. notify all customers or retailers that their PED EGG product is not associated with, sponsored by or affiliated with Plaintiff or Plaintiff's PED EGG product; and

3. issue a recall of all PED EGG product units Defendants have shipped to their customers or retailers.

c. Requiring Defendants to pay to Plaintiff their profits, any damages sustained by Plaintiff as a result of their acts, and/or Plaintiff's costs and attorney's fees for this action, pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 505, Conn. Gen. Stat. §42-110(b) and/or Conn. Gen. Stat. §35-11(i) *et seq.*;

d. Requiring Defendants to pay to Plaintiff three times the amount of Plaintiff's actual damages due to the circumstances of this case, pursuant to 15 U.S.C. § 1117(b) and/or Conn. Gen. Stat. §35-11(i);

e. Requiring Defendant to pay Plaintiff's actual damages and pay to Plaintiff any additional profits of Defendants, pursuant to 17 U.S.C. § 504(b);

f. Requiring Defendants to pay to Plaintiff statutory damages, pursuant to 17 U.S.C. § 504(c);

g. Requiring that all labels, signs, prints, packages, wrappers, receptacles, and advertisements of Defendants' PED EGG product, and any reproduction, copy, counterfeit or colorable imitation of Plaintiff's PED EGG Trademarks, product and packaging, and all plates, molds, matrices and other means of making the same, be delivered up to Plaintiff for destruction, pursuant to 15 U.S.C. § 1118;

h. Requiring that all copies of Plaintiff's PED EGG packaging and instructions, and all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such

copies may be reproduced, be impounded and delivered up to Plaintiff for destruction, pursuant to 17 U.S.C. § 503;

    i.    Requiring that all copies of Plaintiff's PED EGG packaging and instructions, and all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies may be reproduced, be seized and forfeited to the United States, pursuant to 17 U.S.C. § 509;

    j.    Imposing Plaintiff's reasonable attorneys' fees against Defendant because of the exceptional nature of this case, pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 505, and/or Conn. Gen. Stat. §35-11(i).

    k.    Requiring Defendants to pay to Plaintiff punitive damages due to the exceptional circumstances of this case;

    l.    Requiring Defendants to pay interest and costs; and

    m.    Granting such other and further relief as this Court deems just and proper.

PLAINTIFF,
TELEBRANDS CORP.

By:    /s/ Richard S. Order
RICHARD S. ORDER, ESQ. (ct02761)
Axinn, Veltrop & Harkrider LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100
(860) 275-8101 (fax)
rso@avhlaw.com

PETER D. MURRAY, ESQ.
WENDY E. MILLER, ESQ.
Cooper & Dunham LLP
30 Rockefeller Center
New York, New York 10112
(212) 278-0400
(212) 391-0525 (fax)
pdmurray@cooperdunham.com
wmiller@cooperdunham.com