```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

TELEBRANDS CORP.,                  :
                                   :
     Plaintiff,                    :
                                   :
     v.                            :     CASE NO. 3:09CV734(RNC)
                                   :
MARC GLASSMAN, INC. and            :
MAGIC CREATIONS, INC.,             :
                                   :
     Defendants.                   :
```

RULING AND ORDER

The plaintiff, Telebrands Corp., brought this action against the defendant, Magic Creations, Inc., alleging, inter alia, copyright infringement.  The parties settled the case.  As part of the settlement agreement, the defendant agreed to the entry of a stipulated injunction.  The plaintiff now alleges that the defendant violated the injunction and files the instant "application for a contempt citation." (Doc. #39).  The defendant responds with a "cross-motion for sanctions." (Doc. #45.)  United States District Judge Robert N. Chatigny referred the motions to the undersigned.  (Doc. ##43, 51.)

I.  Legal Standard

A court may "hold a party in contempt for violation of a court order when 'the order violated by the contemnor is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply.'"  Southern New England Telephone Co. v. Global NAPs Inc., 624 F.3d 123, 145 (2d Cir. 2010).  "It need not be established that

the violation was willful."  Paramedics Electromedicina Comercial, Ltda v. GE Medical Systems Information Technologies, Inc., 369 F.3d 645, 6557 (2d Cir. 2004).

II. Magistrate Judge's Authority Regarding a Motion for Contempt

"United States magistrate judges have limited civil contempt authority."  Funnekotter v. Republic of Zimbabwe, No. 09 Civ. 08168(CM)(THK), 2011 WL 5517860, at *2 (S.D.N.Y. Nov. 10, 2011). "The jurisdictional limitations placed upon United States magistrate judges, when addressing a motion for civil contempt, are informed by the provisions of 28 U.S.C. § 636(e)."[1]  NXIVM Corp. v. Bouchey, No. 1:11-MC-0058(GLS/DEP), 2011 WL 5080322, at *3 (N.D.N.Y. Oct. 24, 2011).  "Under that section, in a case other than one over which the magistrate judge presides with a consent of the parties under 28 U.S.C. § 636(c), a magistrate judge is not authorized to issue a final contempt order."  Id.  "Instead, the magistrate judge's function in a 'non-consent' case is to certify

---

[1] Section 636(e)(6)(B)(iii) of Title 28 of the United States Code provides that in civil, non-consent cases, where an act constitutes a civil contempt,
> the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.  The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such persons in the same manner and to that same extent as for a contempt committed before a district judge.

facts relevant to the issue of civil contempt to the district court." Id. (citing cases). "The certification of facts under section 636(e) serves to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." Church v. Steller, 35 F. Supp.2d 215, 217 (N.D.N.Y. 1999). See Toxey v. United States, No. 10 Civ. 3339(RJH)(KNF), 2011 WL 4057665, at *2 (S.D.N.Y. Aug. 25, 2011)("In certifying the facts under Section 636(e), the magistrate judge's role is 'to determine whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt.'"); Bowens v. Atlantic Maint. Corp., 546 F. Supp.2d 55, 71 (E.D.N.Y. 2008)(same).

The district judge, upon certification of the facts, is "required to conduct a de novo hearing at which issues of fact and credibility determinations are to be made." Bowens, 546 F. Supp.2d at 71. See NXIVM Corp. v. Bouchey, No. 1:11-MC-0058, 2011 WL 5080322, at *4 (N.D.N.Y. Oct. 24, 2011) (same). "Only a district court may resolve issues of credibility and fact." Church, 35 F. Supp.2d at 217. See Toxey, 2011 WL 4057665, at *2 ("only the assigned district judge may conduct a 'show cause' hearing respecting an allegation of contempt of court"); Brother v. BFP Investments, Ltd., No. 03-60129-CIV, 2010 WL 2978077, at *5 n.4 (S.D. Fla. June 1, 2010)("Only a district court may resolve issues of credibility and fact in contempt context.") "Whether the conduct of a party constitutes contempt and any sanctions therefor

3

are committed to the discretion of the district court." Church v. Steller, 35 F. Supp.2d 215, 217 (N.D.N.Y. 1999).

III. Certification of Facts

This magistrate judge therefore must construe the plaintiff's application as a motion for certification of facts pursuant to 28 U.S.C. § 636(e)(6). So construed, the motion is granted.

The court has considered the affidavits submitted by the parties in the light most favorable to the plaintiff as the moving party. See Yash Raj Films (USA), Inc. v. Bobby Music Co. & Sporting Goods, Inc., No. 01-CV-8378, 2006 WL 2792756, at *2 (E.D.N.Y. Sept. 27, 2006); Church, 35 F. Supp.2d at 217. The certified facts do not constitute findings of fact; they are only facts gleaned from the submissions with an eye toward determining "whether the moving party can adduce sufficient evidence to establish a prima facie case of contempt." Church, 35 F. Supp.2d at 217.

The following facts are certified:

The plaintiff sells a product known as the PED EGG foot file. It is an egg shaped, precision foot file designed to remove calluses and dead skin from feet. (Compl. ¶11.) The plaintiff's product has a unique and distinctive shape. (Id.) It is copyright and trademarked protected. In May 2009, the plaintiff sued the defendant alleging that it copied the plaintiff's design and sold counterfeit PED EGG products. (Compl. ¶28.) In the fall of 2009,

the parties reached a settlement agreement.  As part of the settlement, the plaintiff filed a "Motion for Entry of Stipulated Final Judgment and Order on Consent" which the court granted. (Doc. ##32, 33.)  The parties' Stipulated Order contains a permanent court-ordered injunction prohibiting the defendant from displaying, offering for sale and/or selling counterfeit PED EGG products.  The stipulated permanent injunction states in relevant part:

> Magic Creations, its owners, shareholders, officers, directors, agents, employees and attorneys, those persons directly or indirectly controlled by it, and those persons in active concert or participation with it and those who receive actual notice of this Order by personal service or otherwise, are hereby permanently enjoined from infringing Telebrands' copyrighted works . . . including but not limited to . . . displaying, distributing, selling, offering for sale, promoting, importing and/or advertising any product that contains substantial material copied from and substantially similar to the Copyrighted Works.

(Doc. #33.)  Pursuant to the court's order, the "Court shall retain jurisdiction to enforce the terms of this Stipulated Final Judgment and Order on Consent."  (Doc. #33.)

In February 2011, one of the plaintiff's authorized distributors, John Clark ("Clark"), attended the Associated Surplus Dealers ("ASD") trade show in Las Vegas.  (Doc. #42, Clark Decl. ¶3.)  The ASD trade show is a surplus and closeout show of consumer goods.  (Id.)  The defendant Magic Creations had reserved booths at the ASD trade show.  (Doc. #42, Clark Decl. ¶4.)  One of Clark's customers told Clark that he had purchased 600 PED EGG products from an individual in one of the booths operated by Magic

5

Creations.  (Doc. #42, Clark Decl. ¶6.)  When Clark and his customer went to the booths, Clark saw a sample PED EGG product offered for sale on the wall of the Magic Creations booth.  (Doc. #42, Clark Decl. ¶7.)  The booth in which the PED EGG product was displayed and offered for sale was identified with a large sign that said "Magic Creations."  (Doc. #56, Clark Reply Decl. ¶3; doc. #69 Clark Decl. ¶7.)  The booth was not divided or sectioned into any visibly separate areas, did not bear any sign identifying any other vendor, and appeared to be operated by a single vendor, Magic Creations.  (Doc. #56, Clark Reply Decl. ¶3.)  The trade show directory confirmed that the booth belonged to Magic Creations.  (Id.)  The people working in the booth did not wear nametags or anything else to suggest that they represented any company other than Magic Creations.  (Doc. #56, Clark Reply Decl. ¶5.)  The individual in the booth, Eli Moustakis, gave Clark the PED EGG as a sample.  (Doc. #42, Clark Decl. ¶7.)  Photos of the sample show that the sample is virtually identical to the plaintiff's product.[2]  (Doc. #42, Clark Decl. Ex. C.)

IV.  <u>Discussion</u>

<u>Whether the Order is Clear and Unambiguous</u>

The parties do not dispute that the court order at issue is clear and unambiguous.  It plainly proscribes the defendant, its

---

[2] For purposes of this motion, the defendant does not appear to contest that the product was a counterfeit PED EGG product.

owners, shareholders, officers, directors, agents, employees and attorneys, those persons directly or indirectly controlled by it, and those persons in active concert or participation with it" from "displaying, distributing, selling, offering for sale, promoting, importing and/or advertising" counterfeit PED EGG products. (Doc. #33.)

Whether Proof of Noncompliance is Clear and Convincing

The "clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." Levin v. Tiber Holding Corp., 277 F.3d 243, 250 (2d Cir. 2002).

The defendant contends that it did not violate the court's order because it did not offer the PED EGG products for sale- another company did. According to Michael Rubino ("Rubino"), the defendant's president, he allowed his friend, Eli Moustakis ("Moustakis"), the President of Malnekoff Enterprises, Inc. ("Malnekoff"), to use some space in the defendant's booths at the trade show. The defendant maintains that it "had no idea what Malnekoff was selling" and no control over what it sold. (Doc. #46 at 5; doc. #47, Rubino Decl. ¶8; doc. #49, Moustakis Decl. ¶3.) The defendant asserts that Malnekoff is a separate entity and that the defendant does not control either Malnekoff or Moustakis. (Id.) The defendant disputes the plaintiff's description of the trade show display and contends that the space Malnekoff used was conspicuously different from that used by the defendant. (Doc.

7

#65, Rubino Reply Decl. ¶4.)  The defendant claims that the "two booths were separated by a 15 foot wide wall" and that Malnekoff did not display a Magic Creations sign.³  (Doc. #65, Rubino Reply Decl. ¶6; Moustakis Reply. Decl. ¶¶3-6.)  The defendant maintains that after the plaintiff filed the instant contempt motion, Rubino told Clark (the plaintiff's distributor who purchased the PED EGG products at the ASD trade show) that the defendant "had nothing to do with the activity that occurred in the booths operated by Malnekoff."  (Doc. #46 at 12; Doc. #47, Rubino Decl. ¶10).  Clark told this to the plaintiff but the plaintiff did not withdraw its motion.  (Doc. #46 at 6.)  The plaintiff later filed a lawsuit against Malnekoff and Moustakis in the Northern District of Illinois.  The defendant contends that the plaintiff "must have obtained the PED EGG depicted in the Illinois complaint" from the ASD trade show and "[t]hus plaintiff knew that Malnekoff was a separate entity who independently operated booths at the ASD trade show."  (Doc. #46 at 7.)

The defendant argues that these facts preclude the court from finding it in contempt. However, in the procedural posture of this motion, the undersigned need not, indeed cannot, resolve these disputed facts.  "The duty of a magistrate under the contempt certification provision is simply to investigate whether further contempt proceedings are warranted . . . ." 91 C.J.S. <u>United States Magistrates</u> § 12 (2012).  See <u>Church v. Steller</u>, 35 F. Supp.2d 215,

---

³The defendant does not claim that Malnekoff had its own sign.

8

217 (N.D.N.Y. 1999)(in context of a motion for contempt, "[o]nly a district court may resolve issues of credibility and fact.")  The district judge must resolve these factual issues and determine whether the defendant should be adjudged in contempt.

<u>Whether the Defendant Was Reasonably Diligent in Attempting to Comply</u>

On the record before the court, the plaintiff has adduced sufficient evidence to show that the defendant was not "reasonably diligent and energetic in attempting to accomplish what was ordered."  <u>Equal Employment Opportunity Comm'n v. Local 638</u>, 753 F.2d 1172, 1178 (2d Cir. 1985).

Viewing the facts in the light most favorable to the plaintiff as the moving party, <u>Church v. Stellar</u>, 35 F. Supp. 2d 215, 217 (N.D.N.Y. 1999), the enjoined counterfeit PED EGG product was offered for sale at a trade show from a booth registered to Magic Creations and that had a sign that said Magic Creations.  The plaintiff has demonstrated the existence of evidence which, if credited, would constitute contempt.

<u>Defendant's Cross-Motion for Sanctions</u> (Doc. #46)

The defendant moves for the imposition of sanctions of attorney's fees and costs pursuant to the court's inherent authority.[4]  The defendant argues that the plaintiff does not have a "colorable basis in fact" for its contempt claim and that "the

---

[4]The defendant initially moved for the imposition of sanctions on two grounds: Fed. R. Civ. P. 11 and the court's inherent authority.  The defendant subsequently withdrew the Rule 11 motion.  (Doc. #65 at 14.)

claim was brought in bad faith." (Doc. #65 at 14.)

The district court possesses the inherent power to impose sanctions against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1992).  "Because of the very potency of the inherent power to sanction, the Supreme Court has warned that it should only be exercised with restraint and discretion." Bilodeau v. Vlack, No. 3:07cv1178(JCH), 2010 WL 2232480, at *3 (D. Conn. May 26, 2010)(internal quotation marks and citations omitted).

> An award of sanctions under the court's inherent power requires both clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes[,] and a high degree of specificity in the factual findings of [the] lower courts. . . . A claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.

Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000). See, e.g., Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol, 194 F.3d 323, 338 (2d Cir. 1999) (sanctions imposed pursuant to court's inherent powers doctrine requires highly specific finding of bad faith).

The defendant maintains that sanctions are warranted because the "[p]laintiff knew or should have known that the alleged PED EGG products purportedly sold at the ASD trade show were sold by Malnekoff, not Magic Creations." (Doc. #46, Def's Mtn at 10.)  In support, the defendant points to Rubino's assertion that he told Clark that the booths at the trade show were under the control of

Malnekoff, not the defendant. (Rubino Decl. ¶10.) It also points out that the plaintiff is attempting to recover damages in the Illinois lawsuit against Malnekoff Enterprises and Eli Moustakis "for the same activity" that it seeks to recover from the defendent in this application. (Doc. #46 at 10.)

The defendant has not met its burden of showing that the plaintiff's motion was "entirely without color" and motivated by "improper purposes." Milltex Industries Corp. v. Jacquard Lace Co., Ltd., 55 F.3d 34, 38 (2d Cir. 1995). The plaintiff was not required to credit the secondhand statement from Rubino disclaiming any knowledge or involvement. The record evidence indicates that the plaintiff had a reasonable basis for its motion. As to the Illinois lawsuit, the plaintiff's motion for contempt concerns the defendant's actions at the ASD trade show whereas the plaintiff's lawsuit against Malnekoff and Moustakis in Illinois arises out of the sale of counterfeit PED EGG products "in the State of Illinois." Telebrands Corp. v. Malnekoff Enterprises, Inc. and Eli Moustakis, 1:11cv2190 (N.D. Ill.) (Compl. ¶26.). The plaintiff's contempt motion is not duplicative of the Illinois lawsuit. The defendant has not shown, as it must, that the plaintiff's motion was "entirely without color." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986). The defendant's cross-motion for sanctions (doc. #46) is denied.[5]

---

[5]This magistrate judge has the authority to issue a final ruling on the motion for sanctions. See Scotch Games Call Co., Inc. v. Lucky Strike Bait Works, Ltd., 148 F.R.D. 65 (W.D.N.Y.

V.  Conclusion

For these reasons, the plaintiff's motion for certification of facts pursuant to 28 U.S.C. § 636(e)(6) (doc. #39) is granted and the defendant's cross-motion for sanctions (doc. #45) is denied.

SO ORDERED at Hartford, Connecticut this 28th day of March, 2012.

```
            /s/
     Donna F. Martinez
     United States Magistrate Judge
```

---

1993) (Imposition of sanctions pursuant to the court's inherent authority is a nondispositive matter.)  Because the ruling is nondispositive of the case, it need not be in the form of a recommended ruling.  See 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).